CARMEN SHANG, as Acting Commissioner of the New York State Department of Social Services, et al., Appellants, v SLOMO SILVIAN, Doing Business as AMBASSADOR HOME FOR ADULTS, et al., Respondents.

Third Department, December 29, 1977

APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (John M. Dufur, Ruth Kessler Toch* and *James B. Tuttle* of counsel), for appellants.

*Austrian, Lance & Stewart, P. C. (Julius Rosen* and *Keith A. Taylor* of counsel), for respondents.

## OPINION OF THE COURT

Mikoll, J.

Defendants herein are the State Association of Homes for Adults, Inc., and its membership, operators of 45 private proprietory homes for adults (PPHA) located in the New York City area. An estimated 65% to 80% of the residents of defendants' homes receive supplemental security income (SSI) which they use in payment for care rendered in the homes.

In response to advice from defendants that residents of the homes receiving SSI would be evicted on or about October 1, 1977 due to the insufficiency of their payments, the Department of Social Services, through an order issued by Acting Commissioner Shang at 12:22 a.m. on October 1, 1977, directed the operators not to evict residents of their homes who are receiving SSI benefits, to maintain the same level of care, and to inform the residents involved of the terms of this order. The order was issued pursuant to section 460-d of the Social Services Law. The Social Services Department was given jurisdiction over private proprietory homes for adults under chapter 669 of the Laws of 1977, effective October 1, 1977.

Defendants rejected the acting commissioner's order on October 3, 1977.

■ Plaintiffs initiated the present action for a preliminary and permanent injunction restraining defendants from violating Acting Commissioner Shang's order through an order to show cause issued on October 6, 1977. On October 13, 1977, following a hearing on the same date, Special Term granted a preliminary injunction restraining defendants from violating the order of Acting Commissioner Shang. This injunction was granted on condition that the Department of Social Services be adequately funded from emergency funding available to the Governor or the State so as to raise the daily rate of SSI benefits paid to each SSI resident by $10 per day retroactive to October 1, 1977, and on the further condition that plaintiffs proceed with due haste to set fair and equitable daily rates for each of the defendants so as to adequately and fairly compensate them for their necessary operating costs with a reasonable return on their investment. Any deficiency or surplus occurring due to the new rates is to be paid or recouped retroactive to September 1, 1977.

Plaintiffs contend that the court-imposed conditions amounted to the issuance of a mandatory injunction against the State and a Supreme Court money judgment against the State. This was asserted to be improper because the State has not waived its immunity to equitable actions and only the Court of Claims can entertain actions for money damages against the State.

We reject these arguments. The order appealed from does not compel mandatory obedience on the part of the State. Plaintiffs are not subject to contempt of court for failure to perform the acts described in the order. Thus, the order herein does not amount to a money judgment since the necessary coercive attribute of a money judgment is missing. The State, under the terms of the order is not required to pay out any money unless it voluntarily chooses to do so.

■ The plaintiffs next argue that the Supreme Court was without power to grant the relief requested upon condition that plaintiffs first perform the described affirmative acts. This argument is without merit. Special Term had inherent power as well as legislative authority to grant the relief requested conditioned upon the payment of money in the exercise of its equitable powers (CPLR 3017, subd [a]; CPLR art 63; Social Services Law, § 460-d, subd 5; *Schlosser v United Presbyt.*

*Home at Syosset,* 56 AD2d 615; *Ungewitter v Toch,* 31 AD2d 583; *Schwartz v Lubin,* 6 AD2d 108, 110; *Welton v City of Lockport,* 13 Misc 2d 341; *City of Buffalo v Buffalo Gas Co.,* 82 Misc 304, affd 160 App Div 914; *City of Buffalo v Buffalo Gas Co.,* 60 Misc 550, mod 128 App Div 918). Under the terms of subdivision 5 of section 460-d of the Social Services Law, the CPLR and applicable case law, the granting of injunctive relief is discretionary with the issuing court. Thus, Special Term had the discretion to issue the injunction herein upon conditions it deemed just in a proper case.

The record demonstrated the existence of an emergency situation which jeopardized the continued care of the residents in adult homes. There was evidence that some operators had gone bankrupt and that others were on the brink of bankruptcy. This emergency situation was recognized by all concerned. Special Term arrived at the $10 emergency payment based on the opinion of one of the deputy commissioners of the Department of Social Services who stated that the $10 daily increase ought to be adequate to carry the adult homes through the emergency period.*

In view of the jeopardy to the well-being of the residents, it was proper for the court to issue an order conditioning the relief sought by the State on an order designed to keep the adult homes in operation, thus preserving the *status quo* pending the establishment of new rates.

Plaintiffs further assert that the order of Special Term amounts to invalid judicial legislation of new SSI rates. This is not so. The order merely directs the emergency funding be used to protect the *status quo* in the event plaintiffs elect to employ the drastic remedy of injunction. These funds are to be recouped in the event that they exceed the new rates to be established by plaintiffs.

The order should be affirmed, with costs.

KOREMAN, P. J., GREENBLOTT, SWEENEY and HERLIHY, JJ., concur.

Order affirmed, with costs.

---

* Remarks of Special Term, at the subsequent hearing in open court between the same parties held on October 26, 1977, explain how the court arrived at the $10 per day rate increase. This court may take judicial notice of the minutes of that court proceeding which have been furnished to the court by defendants on this appeal (cf. *Matter of Sunhill Water Corp. v Water Resources Comm.,* 32 AD2d 1006).