Shubert Theatrical Company, Appellant, *v.* Edward Gallagher and Al Shean, Respondents.

First Department, April 7, 1922.

Injunction — contract by vaudeville team for personal services — action to restrain members of team from performing for others than plaintiff — services not of such special character as to warrant issuance of temporary injunction — clear legal right to permanent injunction not shown — contract to be construed against persons drawing it.

In an action to restrain the defendants, a vaudeville team, from performing for any managers other than the plaintiff, and from performing in any other theatre or place of public amusement, or in any other company except that of the plaintiff, it appeared that the contract entered into between the plaintiff and the defendants consisted of a standard form of a run of the play contract of the Actors' Equity Association, and an attached letter in which it was agreed that the defendants would perform at the Winter Garden or in concerts, and might be placed in vaudeville by the plaintiff at any time.

*Held*, that the plaintiff was not entitled to an injunction *pendente lite*, for, at the time the contract was made, the defendants, as a vaudeville team, were practically unknown, and, by the terms of the contract, they were engaged as general utility men and not as vaudeville stars of the first magnitude, and it does not appear that their talents were unusual in any such degree as to make the loss of their services a matter of serious consequence to the plaintiff.

Furthermore, the burden is on the plaintiff to establish that there was no default on its part in the performance of the contract, and as there is some doubt whether the contract had been performed by the plaintiff, it did not show a clear, legal right to the relief sought, and therefore, a preliminary injunction should not issue.

If the contract is ambiguous or uncertain in its terms, it must be construed most strongly against the plaintiff, for it was drawn by its officers and representatives and the form adopted and the language used is of their selection.

Appeal by the plaintiff, Shubert Theatrical Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of October, 1921, denying the plaintiff's motion for a temporary injunction restraining the defendants, during the pendency of this action, from performing for any managers other than the plaintiff, and from performing in any other theatre, or place of public amusement, or in any other company except that of the plaintiff.

The action was brought to secure a permanent injunction.

*William Klein* [*Charles H. Tuttle* of counsel], for the appellant.

*Keppler & Hochman* [*J. L. Hochman* of counsel], for the respondents.

Page, J.:

The defendants are actors. They were together in vaudeville about twelve years ago for a few weeks, since which time the

defendant Shean has not appeared in vaudeville. Defendant Gallagher has appeared with various partners continuously. The plaintiff decided to establish a vaudeville circuit, it having control of a large number of theatres in which it had produced dramas, musical comedies, and, to a limited extent, vaudeville. On May 18, 1921, the plaintiff prepared and the parties signed a contract, which consisted of the standard form of a run of the play contract of the Actors Equity Association, so called, signed by the parties, to which was attached a letter of even date, signed by the plaintiff, which, so far as material to this case, reads as follows:

" GALLAGHER & SHEAN,
          " New York City:
   " GENTLEMEN.—With reference to the contract which you have this day signed for the season 1921–1922, it is understood that should we desire you to appear and perform in the Winter Garden, that for your exclusive services, so to be rendered, you shall receive the sum of Seven hundred and fifty ($750) Dollars, jointly, per week, based on ten performances at $75.00 per performance * * *. Should your services be called upon in the rendition of concerts as permitted by the Public Authorities, either on Sunday or any other day, you will appear and publicly perform at such concerts, without any extra compensation for such services * * *. It is understood that we shall have the right to place you in what is termed ' vaudeville ' at any time we so desire, and when playing ' vaudeville,' you are to play the number of performances customary in first-class vaudeville theatres, but not to exceed fourteen performances in any one week, at the same salary as called for above. If this confirms your understanding of our agreement, you will kindly so signify at the bottom hereof, and upon your signature being affixed, this will then constitute the agreement between us for the term thereof. * * * "

   At the bottom of this letter was written:
   " I have read the above and same confirms my understanding of the agreement and I sign my name at the bottom hereof, making the above and this a contract between us, for the aforementioned term.          " ED GALLAGHER & AL SHEAN, ARTISTS."

   The form of this contract, consisting of two instruments, each practically complete in itself, has given rise to conflicting claims. The first is a complete contract for actors to take parts in a play, except that the space designating the parts and the name of the play was not filled in. The defendants claim that it was represented to them, and it was their understanding, that they were to be

employed primarily in the production of a play, the name of which, and the parts to which they were to be assigned, were to be thereafter determined, and that their employment at the Winter Garden or in vaudeville was only to be in case the play should not be successful. While the plaintiff claims that it was understood that the defendants were employed solely as a team of vaudeville artists, and that it was not within the contemplation of the parties that they should appear in a play, unquestionably the plaintiff, under this contract, would have the right to require the defendants to perform a part in a play. In fact it would appear that these defendants were to be general utility men, who, for $750 jointly each week, could be required to fill any position in a play, appear in vaudeville, at a concert or at the Winter Garden. The form of the contract and the obligations assumed by the artists to appear, as required by the management, in the different capacities, gives plausibility to the claim of the defendants that they were not employed primarily as vaudeville stars of the first magnitude. At the time the contract was made, as a vaudeville team they were practically unknown. Whatever success they have subsequently attained would seem to be more due to a clever and tuneful song that they purchased after they entered into the contract. As was said by the learned justice at Special Term: " The most that can be said of them is that they were pleasing and successful artists, who commanded fair salaries, but I am not satisfied that they possessed any such special merit or reputation or that their talents were unusual in any such degree as to make their loss a matter of serious consequence to the plaintiff (see *Dockstader* v. *Reed,* 121 App. Div. 846; *Hammerstein* v. *Mann,* 137 id. 580; also Am. & Eng. Ann. Cases, 1914 B note, p. 11 *et seq.*)."

There is another serious obstacle to the plaintiff's motion. The contract by its terms provided: " The date of the first public performance shall be the 15th day of September, 1921; or not later than fourteen days thereafter; employment herein shall begin upon the date of beginning of rehearsals, which date shall not be earlier than four weeks prior to the date of first public performance." The latest time to which the plaintiff could defer the commencement of employment was September 29, 1921. The defendants were entitled to have their employment commence and the salaries to become payable not later than that date or earlier than August 18, 1921. The first notice to the defendants was dated September tenth, requiring the defendants to appear in vaudeville on October third. The defendants claim that the contract for their employment had then expired. The burden is on the plaintiff to show that there was no default on its part in the performance of the contract,

and unless the plaintiff can show a clear legal right to the relief sought, a preliminary injunction should not issue. If the contract is ambiguous or uncertain in its terms, it must be construed most strongly against the plaintiff, for it was drawn by its officers and representatives, and the form adopted and the language used is of their selection.

The order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.