ELK STREET MARKET CORPORATION, Respondent, Appellant, *v.* JOSEPH ROTHENBERG, Appellant, Respondent.

Fourth Department, June 30, 1931.

*Desbecker, Fisk & Newcomb* and *Benjamin D. Reisman* [*Walter C. Newcomb* of counsel], for the plaintiff.

*James O. Moore,* for the defendant.

THOMPSON, J. Upon return of plaintiff's order to show cause why a temporary injunction should not issue, *first,* enjoining defendant from engaging in the produce business at any place in

Erie county, except unit No. 8 in plaintiff's market, and *second,* enjoining defendant from inducing or attempting to induce other tenants of plaintiff to remove from the premises and engage in business elsewhere, the Special Term made an order granting the first part of the motion and denying the second. Plaintiff appeals from so much of the order as denies a part of its motion, and defendant appeals from the order so far as it grants a part of it. The complaint alleges that for upwards of fifty years a wholesale fruit and produce market was situate and maintained at a location in the city of Buffalo approximately bounded by Michigan avenue, Scott street, New York Central railroad tracks and Elk street, and known as the Elk Street Market; that the buildings had become old, dilapidated, obsolete and insufficient; that the commission merchants served by the market launched a movement in the early part of 1929, which continued to July 8, 1930, to procure the erection of a successor to this market in the form of a union terminal, designed to cover and supply the needs of the whole of the city of Buffalo for such purposes, in one plant; that in support of such movement a membership corporation was formed known as the Wholesale Fruit and Produce Boosters Club, Inc., on May 14, 1930, and that on June 20, 1930, plaintiff itself was incorporated " for the purpose of acquiring the new market site and the construction thereon of buildings; " that defendant was active in the movement as organizer, member and director in both corporations, serving as a director of plaintiff and as chairman of its building committee, and resigning as a director on March 28, 1931; that on July 8, 1930, the New York State Realty and Terminal Company made an agreement with plaintiff to lease to it the parcel of land where plaintiff's market was eventually built (*not* the location of the old Elk Street Market) for a term of thirty years, plaintiff agreeing to erect buildings thereon and the Realty and Terminal Company to advance to plaintiff the greater part of the cost thereof which plaintiff agreed to repay, together with the cost of the land, with interest during the aforesaid term upon the occasion of which the Realty and Terminal Company agreed to convey the property to plaintiff; that after July 8, 1930, plaintiff proceeded with the erection of the buildings and the carrying out of the agreement " in reliance upon the defendant and such other commission merchants occupying, leasing and purchasing the units, stores or spaces in such new market buildings; " that on August 28, 1930, plaintiff and defendant made a lease of unit No. 8 for a term commencing December 1, 1930, and to end June 30, 1960, at the annual rental of $2,700, a further condition in the lease being that if the rental was paid for the full term of thirty years " plaintiff

would, upon receiving title thereto from the New York State Realty and Terminal Company, * * * convey to him said unit;" and the complaint further pleads paragraph 14 of the lease, in which defendant covenants that he will not engage in his business at any place in the county of Erie, except the premises leased, during the life of the lease. It should be noted that paragraph 20 of the lease provides that it may be terminated at the expiration of five years upon the lessee giving six months' written notice, in which case he surrenders his right to have the rent paid apply on the purchase price of the rented property. Continuing, the complaint alleges that defendant went into possession and occupied the premises until on or about April 4, 1931, when, in violation of his agreement, he removed therefrom and became engaged and interested in the wholesale fruit and produce business as a commission merchant at a place in the county of Erie and State of New York other than the leased premises. The part of the order granting the temporary injunction is based upon the facts thus far recited.

The remainder of the complaint is devoted to allegations of defendant's efforts to persuade other tenants to abandon the premises which they had leased under similar contracts with plaintiff and to break such contracts; that defendant was paid large sums of money for his activities in all of these respects, and that the erection of the new farmers' market by plaintiff, afterwards added to the new market at the Scott street site, was partly due to defendant's efforts. For these reasons and the further fact that defendant is financially irresponsible, the complaint alleges that irreparable injury and damage will be sustained by plaintiff unless, and prays that, a temporary injunction pending the trial, and a permanent injunction with damages, upon the trial, be granted.

Defendant admits that he was one of the occupants of the old Elk Street Market and that he was active in the preliminary agitation and promotion of the project to erect a new market, and the various organizations and movements launched and functioning during the same period in support of it. He claims, however, that when it was finally determined that the new building would not be built on the old site, he became indifferent and gradually withdrew his interest and support, executing the lease only to save himself, being practically forced into it, and there being no other available thing for him to do. As justification for his abandoning the leased premises and setting up business elsewhere in the county of Erie, defendant asserts that after he had executed the lease, taken possession of the premises and established his business, plaintiff organized and maintained a business of selling the same sort of merchandise that defendant handled, by auction, in result

of which plaintiff attracted defendant's customers away from him by underselling him, at a price he could not meet, with a design to compete and destroy, and actually competing with and destroying defendant's business. Defendant also contends that plaintiff's undertaking of the additional burden of financing and erecting the new farmers' market was against his advice and consent and that it affected his contract with it to the end that plaintiff would be unable to pay its indebtedness to the terminal company when due, thus postponing or making it practically impossible for it to pay for that property, and consequently preventing defendant from obtaining title to his unit in accordance with the terms of the lease. Defendant further claims that the lease is void in that the 19th paragraph provides that a stockholders' meeting representative of fifty per cent of the stock outstanding may vote to increase proportionately the rentals of all tenants without stating upon what ground, for what reason or by what method the amount of such an increase shall be arrived at. Finally defendant denies the claims of plaintiff that he has accepted or had promise of large financial reward for his services in abandoning his lease and inducing others to do the same.

The complaint nowhere alleges that defendant at any time promised or undertook to do anything for the plaintiff with the exception of the covenants of the lease, or that it relied upon or was induced by any conduct of defendant in arranging to obtain a credit and erect these markets. So far as appears defendant acted solely as a volunteer, being interested to obtain better accommodations for his own business, and only as one of many engaged in the project of bringing about the erection of a new market for the use of everybody. There was no contractual or fiduciary relationship between him and plaintiff. He undertook nothing and they depended on nothing that he did or undertook to do. He did not deceive them into anything, and he did not accept or betray any trust. The total relationship of the parties was that plaintiff was in the business of renting space to persons engaged in the wholesale fruit and produce business and defendant, being one of such persons, was its customer. Plaintiff agreed that defendant might occupy unit No. 8 at a certain rental and defendant agreed to pay it. Plaintiff was not in the produce business and defendant was not in the renting business. Neither underwrote or participated in the business of the other. They were simply landlord and tenant. There is not such a showing of responsible cause and consequential effect here as is required in equity and good conscience before such an extraordinary and drastic remedy may be invoked, the facts and considerations present falling short of establishing

the clear legal right that the law requires. (*Forstmann* v. *Joray Holding Co., Inc.*, 244 N. Y. 22; *Shubert Theatrical Co.* v. *Gallagher*, 200 App. Div. 596, 599.) Moreover, upon all of the questions in the case there are claims and charges each against the other which render it impossible to forecast the outcome of the litigation. In such case equity will not interfere by temporary injunction and thus pre-try the issues. The burden imposed on defendant by the injunction outbalances the benefit to plaintiff. (*Jenkins* v. *Marsh*, 225 App. Div. 401.) (See, also, *Valenti* v. *Spiatto*, 223 id. 198 [4th Dept.].) Plaintiff has failed to show irreparable injury suffered or reasonably to be expected.

We have been referred to no precedent nor do we find one in which a temporary injunction has been granted restraining a tenant from breaking a covenant in a lease by which he undertakes not to engage in his business elsewhere than at the leased premises. In all the circumstances we feel that these questions should be left to the determination of the trial court after hearing the proofs of both sides. "The question whether a court of equity should award its remedy by decreeing * * * an injunction should be reserved to the trial of the action, when a full disclosure can be made of all the facts whereby the court may determine whether it is equitable and just that the injunction should be granted." (*Brighton By the Sea, Inc.*, v. *Rivkin*, 201 App. Div. 726, 728.)

The portion of the order which granted the temporary injunction should be reversed.

It is fundamental that no person has a right to persuade a party to a binding contract to repudiate, abandon or break it. Movant's affidavits clearly show that defendant has attempted to influence some of plaintiff's tenants to throw up their leases, abandon the premises and engage in the same business elsewhere in the city of Buffalo. Defendant denies these charges, but upon considering the affidavits both supporting and resisting the motion, we are convinced that there is sufficient basis in fact for the granting of a temporary injunction against defendant in these respects. The court below did not deny this part of the motion on the facts but on the ground that injunction could not issue because the lease contained no provision forbidding defendant to induce other tenants to remove from the premises. This we think was error. It is not the lease but the complaint to which we must look in deciding whether or not an injunction should issue. (Civ. Prac. Act, § 877; *Huntington* v. *Cortland Home Tel. Co.*, 62 App. Div. 517.) In this respect the order should also be reversed, and the motion for a temporary injunction restraining defendant from inducing or attempting to induce other tenants of plaintiff to abandon their

lease, remove from the premises or engage in the business for which the premises were leased, elsewhere in the county of Erie, should be granted. A further consideration which impels us to the conclusion that plaintiff is entitled to this relief is the fact that it plainly appears that defendant is insolvent. The order should be reversed, without costs, and the motion for a temporary injunction restraining defendant, as above indicated, should be granted, without costs.

All concur, CROSBY, J., in result as to the injunction restraining the defendant from doing business elsewhere on the ground that the lease itself is invalid under section 19 thereof. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Order reversed on the law, without costs of this appeal to either party, and motion for injunction restraining defendant from doing business elsewhere than upon the leased premises denied, and injunction restraining defendant from inducing or attempting to induce other tenants of the plaintiff to break their leases granted, without costs.